[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10075
_____

D.C. Docket No. 2:12-cv-01088-BJR-SRW

MARIA N. VINSON,

Plaintiff - Appellant,

versus

KOCH FOODS OF ALABAMA, LLC,
KOCH FOODS, LLC,
DAVID BIRCHFIELD,

Defendants - Appellees.

_____

Appeals from the United States District Court
for the Middle District of Alabama
_____

(May 23, 2018)

Before WILSON and JORDAN, Circuit Judges, and CONWAY,* District Judge.

PER CURIAM:

Maria Vinson, a Puerto Rican woman, sued her former employer, Koch Foods of Alabama, LLC (Koch), and her former boss, David Birchfield, for race and national origin discrimination under 42 U.S.C. § 1981 and Title VII. The district court dismissed some of her claims, and later granted summary judgment on the surviving claims. Vinson appeals both the dismissal and summary judgment orders. After careful review of the briefs and the record, and having the benefit of oral argument, we conclude that the district court erred in granting summary judgment on Vinson's discriminatory discipline and termination claims. We do not find merit in Vinson's challenge to the district court's order of dismissal.

## I.    Facts

Koch operates facilities where it kills, processes, and packages chicken and byproducts. Birchfield is the Complex Human Resource Manager and oversees and manages the Montgomery facility, where Vinson worked. Birchfield hired Vinson in early 2010 to work in the HR department as a new hire orientation clerk and translator. Her duties included processing new hires; translating, issuing and verifying identification cards and documents; completing federal forms for all

---

*Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

personnel; conducting personnel drug screening; maintaining personal attendance records; and assisting with payroll.

On January 5, 2012, Vinson and her co-worker, Heather Bowen (a white female), asked Mitsi James, the senior HR person in the department (also a white female), if they could visit a co-worker in the hospital. James approved. Bowen and Vinson left and went off property for about three hours. James also left at the same time, leaving the HR office unattended. When they returned to the plant, Birchfield suspended all three until further notice. James and Bowen returned to work on January 11. Vinson did not return to work until the following day, but she was paid for the same amount of hours that James and Bowen worked on January 11.

After the suspension, Birchfield changed Vinson's job responsibilities. Birchfield told Vinson that he wanted her to work with new hires on the production floor. Her workstation in the HR office was removed, and she was required to learn all of the production line duties, which included handling chicken carcasses and operating machinery. Birchfield did not make similar changes to the duties of James or Bowen. Vinson's old job was filled by a Puerto Rican woman.

Birchfield fired Vinson in May 2012. She was told "that her position was not producing sufficient feedback and productivity," and that her position was being eliminated. In reply to Vinson's Charge of Discrimination filed with the

3

EEOC, Birchfield stated that Vinson was fired because plant manager Johnny Gill reported that Vinson was not doing her job, the company could not afford the position, and Gill wanted the position eliminated.  But Gill later testified that he did not recommend that Birchfield terminate Vinson.  Since Vinson's termination, Koch has not hired anyone to perform Vinson's role on the production floor.

## II.    Standard of Review

We review de novo the district court's grant of summary judgment, drawing "all reasonable inferences in the light most favorable to" Vinson.  *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S. Ct. at 2510. Summary judgment is appropriate only if a case is "so one-sided that one party must prevail as a matter of law." *See id*. at 251–52, 106 S. Ct. at 2512.

## III.    Discriminatory Discipline

Vinson can prevail on her discriminatory discipline claim by showing that she engaged in misconduct similar to that of a person outside her protected class, and that the disciplinary measures enforced against her were more severe than

4

those enforced against that other person who engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). She must also suffer an adverse employment action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). To prove an adverse employment action, Vinson "must show a serious and material change in the terms, conditions, or privileges of employment." *Id*. at 1239 (emphasis omitted). Her "subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*.

The district court erred in granting summary judgment on the discriminatory discipline claim. The district court found that Vinson did not suffer an adverse employment action because she did not mind being on the production floor, she eventually received a raise, and her duties did not change significantly. However, her subjective view of the change is not controlling. And although she received a pay raise a month before she was fired, this does not necessarily make an adverse employment action favorable. Vinson presented evidence that her transfer moved her out of the HR office to the refrigerated production floor. She lost her computer access and her office. Her duties now included pulling guts from chicken carcasses, sawing chicken carcasses, hanging dead chickens on shackles, cutting and removing damaged meat from chicken carcasses, using sealing machines for packaging, and weighing boxes of meat. This was a significant change in duties.

5

*See Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005) ("[I]f an employer's conduct negatively affects an employee's salary, title, position, or *job duties*, that conduct constitutes an adverse employment action.") (emphasis added). Neither James nor Bowen underwent such a change after the suspension. Because a reasonable person in the circumstances could view Vinson's transfer as adverse, Vinson successfully stated a prima facie case.

Further, Vinson presented sufficient evidence to permit a rational jury to conclude that Birchfield's reason for the transfer was pretext. Birchfield explained that he wanted Vinson to interact more with production floor employees and assist in training them in their new job responsibilities. But the evidence shows that it was never clear what her new job actually entailed. She was never provided a job description despite asking multiple times. The position does not exist on any organizational chart or at any of the other processing plants. Gill did not know what Vinson was doing on the production floor. And no one filled the position after Vinson was fired. A reasonable jury could conclude that Birchfield created this position for Vinson specifically because it was unnecessary, and, ultimately, it gave him a reason to fire her.

## IV.    Discriminatory Termination

Vinson stated a mixed-motive theory for her discriminatory termination claim. The appropriate framework for examining mixed-motive claims at

summary judgment requires a court to determine only whether a plaintiff has offered "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor for the defendant's adverse employment action." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1232–33 (11th Cir. 2016) (alteration adopted).

The district court granted summary judgment on Vinson's discriminatory termination claim for three reasons. First, the district court concluded that the record did not discredit the defendants' reasons for firing Vinson, ostensibly requiring Vinson to show pretext. But pretext has no place in a motivating factor analysis. *See id.* at 1237–38. Vinson did not need to discredit the defendant's reasons. She only needed to demonstrate a genuine issue of material fact as to whether race or national-origin was *a* motivating factor in the decision to terminate her. Even so, Vinson did present evidence that Birchfield's reasons for firing her were not the real reasons. Gill did not recall ever telling Birchfield that Vinson was not doing her job or that he could not afford to keep the position. And Gill did not recommend that Birchfield terminate Vinson.

Second, the district court concluded that Birchfield's hiring of a Puerto Rican woman to replace Vinson in the HR office belies his alleged discriminatory animus toward Hispanics. But there is no rule that requires Vinson to show that

her replacement does not share her protected attribute.  *See Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–36 (11th Cir. 1984); *see also Stella v. Mineta*, 284 F.3d 135, 145–46 (D.C. Cir. 2002); *Perry v. Woodward*, 199 F.3d 1126, 1136–41 (10th Cir. 1999).

Third, the district court concluded that Vinson "can point to nothing that suggests that [her] race and/or national origin was a motivating factor in her termination."  But she did offer evidence of Birchfield's discriminatory animus.  For example, Patrick Rinn, the union representative for the Montgomery facility at the time, observed Birchfield disciplining Hispanics more harshly than white people.  This evidence, along with the competing evidence surrounding Birchfield's explanation for Vinson's termination, establishes a jury issue as to whether race or national-origin was a motivating factor in the decision to terminate her.

We conclude that the district court erred in granting summary judgment on Vinson's discriminatory discipline and termination claims.  The district court did

not err in its disposition of any other claims.[2]  Thus, we affirm in part, reverse in

part, and remand for proceedings consistent with this opinion.[3]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[2] We also reject Birchfield's alternative argument that he was not properly named in the complaint as being sued in his individual capacity and was not properly served.  He raised this argument for the first time in his reply brief in support of his motion for summary judgment. Thus, he waived the argument.  *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008).

[3] Because we reverse the district court in part, we need not decide whether the district court abused its discretion by not awarding costs to the defendants.